UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ROBIN L.,<br><br>               Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br><br>Case No. 2:24-cv-00907<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Robin L.[1] brought this action for judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration.[2] The administrative law judge (ALJ) who addressed Ms. L.'s application determined she did not qualify as disabled.[3] Ms. L. argues the ALJ erred by failing to account for her mild mental limitations in the residual functional capacity determination, and by reaching conclusions about her residual functional capacity which conflict with a persuasive medical opinion.[4] Because the ALJ adequately considered Ms. L.'s mental impairments in assessing her residual functional capacity, and the residual functional

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–31, Doc. No. 12.)

[4] (*See* Opening Br. 9, Doc. No. 17.)

capacity determination does not conflict with any persuasive medical opinion, the Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports her factual findings and whether she applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 7.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

**APPLICABLE LAW**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16]  And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. L. applied for disability insurance benefits under Title II of the Social Security Act.[18]  After an administrative hearing,[19] the ALJ issued a decision denying benefits.[20] At step two of the sequential evaluation, the ALJ found Ms. L. had the severe impairments of degenerative disc disease of the lumbar spine and morbid obesity.[21] She concluded Ms. L. also had nonsevere physical impairments, along with the nonsevere mental impairments of anxiety and depression.[22]  The ALJ concluded Ms. L.'s mental impairments caused no more than mild limitations in the areas of mental

---

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 17, 184–85); 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 37–68.)

[20] (Tr. 17–31.)

[21] (Tr. 20.)

[22] (Tr. 20–21.)

functioning known as the "paragraph B" criteria.[23]  At step three, the ALJ found Ms. L.'s impairments did not meet or medically equal an impairment listing.[24]

The ALJ then determined Ms. L. had the residual functional capacity to perform light work "including the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, except she can frequently stoop and climb, and can tolerate frequent exposure to work at unprotected heights."[25]  The ALJ did not include any limitations relating to Ms. L.'s mental impairments.[26]  At step four, based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found Ms. L. could perform past work as a bonding agent.[27]  Accordingly, the ALJ found Ms. L. not disabled and denied her claim.[28]  This decision became final when the Appeals Council denied Ms. L.'s request for review.[29]

## ANALYSIS

Ms. L. argues the ALJ erred by failing to account for the mild mental limitations she recognized at step two when determining Ms. L.'s residual functional capacity

---

[23] (Tr. 21–23.)

[24] (Tr. 24.)

[25] (Tr. 25.)

[26] (*See* Tr. 25, 30.)

[27] (Tr. 30–31.)

[28] (Tr. 31.)

[29] (Tr. 1–3.)

(RFC).[30]  Ms. L. contends the ALJ failed to explain the omission of mental limitations from the RFC determination, even though the omission conflicted with a medical opinion the ALJ found persuasive.[31]  She also claims the ALJ impermissibly failed to separately evaluate Ms. L.'s mental impairments in the RFC determination, instead relying on her step-two findings that Ms. L's mental impairments were nonsevere.[32]

As explained below, the ALJ's RFC determination did not conflict with any persuasive medical opinion.  The record shows the ALJ considered Ms. L.'s mental impairments in assessing RFC, and the ALJ adequately explained her finding that Ms. L.'s RFC did not include mental limitations.  Further, the ALJ's omission of mental limitations is supported by substantial evidence.  Accordingly, Ms. L. has shown no error in the RFC assessment.

A.  Legal Standards

At steps two and three of the sequential evaluation process, an ALJ must rate the degree of limitation resulting from medically determinable mental impairments in four broad functional areas, known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[33]  These criteria

---

[30] (Opening Br. 11–12, 17–18, Doc. No. 17.)

[31] (*Id.* at 11–12, 15–17.)

[32] (*Id.* at 11–15.)

[33] *See* 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00E.

are "not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."[34]  The ALJ must rate the claimant's degree of limitation in each area on a five-point scale: none, mild, moderate, marked, or extreme.[35]  At step two, a mental impairment is not severe if it results in no more than mild limitations in these areas.[36]  At step three, to meet the requirements of "paragraph B" of the mental disorder listings, the claimant must have "extreme limitation of one, or marked limitation of two, paragraph B areas."[37]

A claimant's RFC, used in steps four and five of the sequential evaluation, reflects the most she can do in a work setting considering her limitations.[38]  In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[39]  A finding of limitation under the paragraph B criteria at steps two and three "does not necessarily translate to a work-

---

[34] SSR 96-8p, 1996 SSR LEXIS 5, at *13 (July 2, 1996).

[35] See 20 C.F.R. § 404.1520a(c)(4); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2.

[36] See 20 C.F.R. § 404.1520a(d)(1).

[37] 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2.

[38] See 20 C.F.R. § 404.1545(a)(1); see also SSR 96-8p, 1996 SSR LEXIS 5, at *1–2.

[39] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

related functional limitation for the purposes of the RFC assessment."[40]  But "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."[41]  In determining RFC, an ALJ "must consider the combined effect of all medically determinable impairments, whether severe or not."[42]  And "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings."[43]

In determining a claimant's RFC, an ALJ must also assess the persuasiveness of medical opinions and prior administrative medical findings.[44]  "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."[45]  The failure to explain the omission of limitations from medical opinions which the ALJ finds persuasive constitutes legal error requiring reversal.[46]

---

[40] *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished) (addressing a finding of moderate limitation at step three).

[41] *Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013).

[42] *Id.* at 1069 (emphasis omitted) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

[43] *Id.* (quoting SSR 96-8p, 1996 SSR LEXIS 5, at *13).

[44] 20 C.F.R. § 404.1520c.

[45] SSR 96-8p, 1996 SSR LEXIS 5, at *20.

[46] *See Parker v. Comm'r*, 922 F.3d 1169, 1172–73 (10th Cir. 2019).

B. ALJ's Decision

At step two of the sequential evaluation, the ALJ found Ms. L. had a mild limitation in two of the four "paragraph B" areas: interacting with others and concentrating, persisting, or maintaining pace.[47]  With regard to interacting, the ALJ acknowledged Ms. L.'s testimony that she had problems being around other people.[48] The ALJ noted that, on one function report, Ms. L. asserted she had a hard time with authority and did not like to be around a lot of people because of anxiety and pain.[49] But on another function report, Ms. L. did not claim any problems getting along with others.[50]  The ALJ observed Ms. L. was able to care for her grandson, her youngest daughter, and her adult son (while he was in the ICU and after his discharge).[51]  Ms. L. also told the consultative examiner she could go to the store and run errands, and she cooperated during the examination.[52]  The ALJ concluded Ms. L.'s "ability do get out in the community and do such activities does not support any significant limitation in this area."[53]

---

[47] (Tr. 22–23.)

[48] (Tr. 22.)

[49] (*Id.* (citing Tr. 231–42).)

[50] (*Id.* (citing Tr. 206–13).)

[51] (*Id.*)

[52] (*Id.*)

[53] (*Id.*)

In the area of concentrating, persisting, and maintaining pace, the ALJ acknowledged Ms. L. reported problems concentrating, paying attention, and completing tasks.[54]  But the ALJ noted Ms. L. was "able to maintain attention for the duration of the approximately one hour [consultative] examination," and the examiner found her attention and concentration adequate.[55]  The ALJ also noted Ms. L. could handle money, pay bills, handle a savings account, and drive.[56]  The ALJ assessed a mild limitation in this area.[57]  The ALJ also found Ms. L. had no limitation in the areas of understanding, remembering, or applying information, and adapting or managing herself.[58]

Because Ms. L. had no more than mild limitations in the four functional areas, the ALJ found her depression and anxiety nonsevere.[59]  The ALJ also acknowledged "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment," and noted "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment."[60]  The ALJ also stated: "The following residual functional capacity

---

[54] (*Id.* (citing Tr. 206–13, 231–42).)

[55] (Tr. 23 (citing Tr. 671).)

[56] (Tr. 22–23.)

[57] (Tr. 22.)

[58] (Tr. 22–23.)

[59] (Tr. 23.)

[60] (*Id.*)

assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."[61]

In the portion of the decision addressing RFC, the ALJ discussed Ms. L.'s mental impairments in her evaluation of medical opinions and prior administrative medical findings.[62]  First, the ALJ considered the medical opinion of the psychological consultative examiner, Dr. Tanya Colledge.[63]  As the ALJ noted, Dr. Colledge indicated Ms. L. could lead an independent life, take care of her basic needs, do numerous household chores, cook for herself and her family, and run errands.[64]  Dr. Colledge also opined Ms. L. was "capable of potentially completing some basic work tasks," "present[ed] with some impairment in her capacity to tolerate work stress," and was "capable of remembering and carrying out simple as well as complex instructions."[65]  But the ALJ found this opinion "rather vague."[66]  In her assessment, the ALJ noted Ms. L., herself, reported being able to cook, clean, shop, and drive.[67]  And the ALJ observed Ms. L. was "not receiving any specialized mental health treatment," and the state

---

[61] (*Id.*)

[62] (*See* Tr. 29–30.)

[63] (Tr. 29; *see also* Tr. 669–74 (Dr. Colledge's psychological examination report).)

[64] (Tr. 29 (citing Tr. 672).)

[65] (*Id.* (citing Tr. 672).)

[66] (*Id.*)

[67] (*Id.* (citing Tr. 206–13 (Ms. L.'s April 26, 2022 function report)).)

agency psychological consultants found she had no severe impairment.[68]  Accordingly, the ALJ found Dr. Colledge's opinion to be "of limited persuasiveness."[69]

Next, the ALJ considered two state agency psychological consultants' prior administrative findings.[70]  The ALJ found the first consultant's conclusion that Ms. L. had no medically determinable mental impairments only partially persuasive.[71] Observing it was "supported at the time," the ALJ decided later evidence was "more consistent with a finding that [Ms. L.] has non-severe impairments."[72]  On reconsideration of Ms. L.'s claim, the second consultant, Dr. Charles Raps, found Ms. L. had nonsevere mental impairments causing mild limitations in two "paragraph B" areas (interacting with others and concentrating, persisting, and maintaining pace) and no limitations in the other two areas.[73]  The ALJ considered this finding "persuasive," noting it was "supported by a narrative explanation that is consistent with the overall record."[74]

The ALJ concluded her RFC analysis with the following statement:

> [Ms. L.'s] nonsevere impairments, including . . . depression and anxiety, while not discussed in detail in this section, were considered in the formulation of [her] residual functional capacity pursuant to SSR 96-8p.  The undersigned finds that [Ms. L.'s] residual functional capacity is appropriate

---

[68] (*Id.*)

[69] (*Id.*)

[70] (Tr. 29–30.)

[71] (Tr. 29.)

[72] (*Id.*)

[73] (*See* Tr. 29–30 (citing Tr. 80–89).)

[74] (Tr. 30.)

in this case, and [Ms. L.'s] nonsevere impairments do not warrant additional restrictions that would further limit [her].[75]

Ultimately, the ALJ included no mental limitations in Ms. L.'s RFC.[76]

## C. Discussion

Ms. L.'s argument that the RFC assessment conflicts with a persuasive medical opinion is addressed first, before her argument that the RFC assessment failed to account for her mental impairments.

### 1. Conflict with a Persuasive Medical Opinion

Ms. L. contends the omission of mental limitations from the RFC conflicts with the opinion of the second state agency psychological consultant, Dr. Raps, that Ms. L. had a mild limitation in two "paragraph B" areas.[77]  She contends that where the ALJ found Dr. Raps' opinion persuasive, she had to either include mental limitations in the RFC or explain their omission.[78]  In response, the Commissioner asserts Dr. Raps provided prior administrative findings—not a medical opinion—and his findings did not conflict with the RFP assessment.[79]

The Commissioner is correct.  Dr. Raps' statements are properly considered to be prior administrative medical findings rather than medical opinions, as those terms are

---

[75] (*Id.*)

[76] (*See* Tr. 25.)

[77] (Opening Br. 11–12, 15–17, Doc. No. 17.)

[78] (*Id.*)

[79] (*See* Comm'r's Br. 6, Doc. No. 24.)

defined in agency regulations.  The regulations define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [the claimant] has one or more impairment-related limitations or restrictions" in enumerated work-related abilities.[80]  This includes the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."[81]  A "prior administrative medical finding," on the other hand, is "a finding . . . about a medical issue made by [] Federal and State agency medical and psychological consultants at a prior level of review . . . based on their review of the evidence in [the] case record."[82]  This includes findings about the existence and severity of a claimant's impairments, whether impairments meet a listing, and a claimant's functional capacity.[83]  Where Dr. Raps (a state agency psychological consultant) made findings regarding the severity of Ms. L.'s mental impairments on reconsideration of her claim, based on a review of evidence in her file, he provided prior administrative medical findings.

As noted above, Social Security Ruling (SSR) 96-8p provides: "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must

---

[80] 20 C.F.R. § 404.1513(a)(2).

[81] *Id.* § 404.1513(a)(2)(ii).

[82] 20 C.F.R. § 404.1513(a)(5).

[83] *Id.* § 404.1513(a)(5)(i), (iii), (iv).

explain why the opinion was not adopted."[84]  While this ruling does not specifically address prior administrative findings, Ms. L. cites a district court decision applying the same standard to a state agency consultant's prior administrative medical findings.[85]  Likewise, the Tenth Circuit has applied this standard to opinions from a state agency medical consultant who reviewed the claimant's file—although it is unclear whether the consultant in that case provided those opinions in the context of a prior level of review.[86]

Ultimately, it is unnecessary to decide whether the standard in SSR 96-8p regarding conflicts between the RFC and a medical opinion applies to prior administrative findings.  Even assuming it applies, Ms. L. fails to identify any conflict between Dr. Raps' findings and the ALJ's RFC assessment.  Dr. Raps made findings regarding Ms. L.'s limitations under the "paragraph B" criteria at step two, assessing mild limitations in two areas and concluding her mental impairments were nonsevere.[87]  The ALJ considered these findings persuasive and made consistent findings at step two, determining Ms. L. had mild limitations in the same two functional areas.[88]  But, as

---

[84] SSR 96-8p, 1996 SSR LEXIS 5, at *20; *see also Parker*, 922 F.3d at 1172 ("Given the discrepancy between the agency's assessment of mental capacity and the medical opinions, the agency had an obligation to provide an explanation.").

[85] *See Jamie W. v. O'Malley*, No. 2:22-cv-00804, 2024 U.S. Dist. LEXIS 57511, at *6–7 (D. Utah Mar. 28, 2024) (unpublished).

[86] *See Parker*, 922 F.3d at 1170–73.  The *Parker* court described the state agency consultant's statements as "medical opinions," *id.*, but did not expressly address the distinction between medical opinions and prior administrative findings.

[87] (*See* Tr. 83–85.)

[88] (Tr. 22, 29–30.)

noted, a finding of limitation under the paragraph B criteria at step two "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."[89]  Dr. Raps did not assess Ms. L.'s functional capacity or opine she had any specific, work-related functional limitations for purposes of her RFC.  Accordingly, the ALJ's omission of mental limitations in the RFC assessment does not, on its face, conflict with Dr. Raps' step-two findings.  In other words, the ALJ decided consistently with Dr. Raps' findings, and there was no conflict the ALJ needed to explain.

### 2.  Consideration of Mental Impairments in the RFC Assessment

Ms. L. also contends, more generally, that the ALJ failed to account for her mental impairments in the RFC determination.[90]  She asserts the ALJ improperly relied on the step-two finding of non-severity, without separately evaluating the impact of mental impairments on her RFC or explaining the omission of mental limitations.[91]  She argues the ALJ's "failure to include any functional limits in the RFC nor any discussion of Plaintiff's mental limitations within the RFC assessment at steps 4 and 5 is error."[92]

Ms. L. relies on *Wells v. Colvin*,[93] where the Tenth Circuit held "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making

---

[89] *Bales*, 576 F. App'x at 798.

[90] (*See* Opening Br. 12–15, Doc. No. 17.)

[91] (*See id.*)

[92] (*Id.* at 14.)

[93] 727 F.3d 1061 (10th Cir. 2013).

conclusions at steps four and five."[94]  In that case, the ALJ found a claimant's mental impairments nonsevere, then stated "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below."[95]  According to the court, this language suggested the ALJ "may have relied on his step-two findings to conclude that Ms. Wells had no limitation based on her mental impairments," and noted, "[i]f so, this was inadequate."[96]  But the court acknowledged the ALJ also "separately discuss[ed] Ms. Wells' mental impairments to some degree, when assessing her credibility as part of his RFC determination."[97]  And the court noted "[t]his discussion, though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of Ms. Wells' ability to complete various job functions as part of determining her RFC."[98]  However, the court declined to decide "whether the discussion was procedurally adequate" because it found "the ALJ's conclusions on this point were not supported by substantial evidence."[99]

---

[94] *Id.* at 1068–69.

[95] *Id.* at 1069 (alterations in original) (citation omitted).

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] *Id.*

Ms. L. also relies on three district court cases applying *Wells*. In *Kelly S. v. O'Malley*,[100] an ALJ found a claimant had mild limitations in two mental functioning areas at step two.[101] The ALJ stated his RFC determination "reflect[ed] the degree of limitation [he] has found in the 'paragraph B' mental function analysis."[102] But the ALJ's RFC analysis was "devoid of any discussion of [the claimant's] asserted mental impairments and any limitations that may result from these impairments."[103] The court noted that "[w]hile the ALJ was not obligated to include any mental limitations in [the] RFC, he was required to consider [the claimant's] mild mental impairments in assessing her RFC," which "was not done."[104] This failure required remand.[105] Similarly, in *Lori A. v. Kijikazi*,[106] an ALJ found a claimant had mild limitations in the paragraph B criteria and stated his RFC assessment "reflect[ed] the degree of limitation [he] found" in the step-two analysis.[107] But "the ALJ's discussion supporting his RFC assessment contain[ed] no reference to or any limitations imposed by [the claimant's] mental

---

[100] No. 4:24-cv-00030, 2024 U.S. Dist. LEXIS 131970 (D. Utah July 23, 2024) (unpublished).

[101] *Id.* at *5.

[102] *Id.*

[103] *Id.* at *6.

[104] *Id.* at *7.

[105] *Id.* at *7–8.

[106] No. 1:21-cv-00101, 2022 U.S. Dist. LEXIS 133043 (D. Utah July 26, 2022) (unpublished).

[107] *Id.* at *7–8 (second alteration in original).

impairments."[108]  Because there was "no indication" the ALJ "considered [the claimant's] mental impairments in fashioning [the] RFC," remand was required.[109]  Likewise, in *Johnson v. Kijikazi*,[110] the court remanded the case where the ALJ found mild mental limitations at step two but "included no discussion of [the claimant's] mental limitations" in the RFC assessment.[111]

The Commissioner asserts these cases are distinguishable, and relies instead on *Suttles v. Colvin*.[112]  In that case, the claimant argued the ALJ improperly disregarded his mental impairment at step four after finding it nonsevere at step two.[113]  The Tenth Circuit disagreed, noting the ALJ "discussed evidence relating to depression" at step four "and then pointedly omitted any limitation associated with that mental impairment on the RFC."[114]  The court acknowledged the ALJ "admittedly could have been more explicit in tying the former discussion to the latter conclusion."[115]  But the court noted that, unlike in *Wells*, the ALJ "did not make any ancillary statement . . . affirmatively

---

[108] *Id.* at *8.

[109] *Id.* at *9.

[110] No. 4:20-cv-00104, 2021 U.S. Dist. LEXIS 158115 (D. Utah Aug. 19, 2021) (unpublished).

[111] *Id.* at *8–9.

[112] 543 F. App'x 824 (10th Cir. 2013) (unpublished); (Comm'r's Br. 9–11, Doc. No. 24).

[113] *Suttles*, 543 F. App'x at 826.

[114] *Id.*

[115] *Id.*

suggesting an improper conflation of the step-two and step-four assessments."[116]  The

court held the ALJ conducted a mental RFC assessment separate from the step-two

nonseverity determination, and noted the claimant did not challenge whether substantial

evidence supported this assessment.[117]  The Commissioner also relies on *Terry M. v.

Saul*,[118] where the court found an ALJ adequately conducted a mental RFC assessment

separate from his step-two findings.  In *Terry M.*, the ALJ:

> (1) recognized that a separate mental RFC assessment was required at
> step four; (2) discussed the medical opinion evidence related to Plaintiff's
> mental impairments; (3) specifically omitted any limitations concerning
> Plaintiff's mental limitations from the RFC and the hypotheticals posed to
> the VE; and (4) did not make any statements indicating that he was using
> his step-two findings to substitute for an adequate RFC analysis.[119]

Here, Ms. L. has not shown the ALJ failed to separately assess her mental

impairments in the RFC determination.  Unlike *Kelly S.*, *Lori A.*, and *Johnson*—and

contrary to what Ms. L. claims—the ALJ's RFC assessment in this case was not devoid

of discussion of Ms. L.'s mental impairments.  Rather, the ALJ discussed Ms. L.'s

mental impairments and related limitations in the RFC portion of the decision—both in

evaluating the medical opinion evidence and in summarizing her RFC findings.[120]

---

[116] *Id.*

[117] *Id.*

[118] No. 2:19-cv-00902, 2020 U.S. Dist. LEXIS 195895 (D. Utah Sept. 15, 2020)
(unpublished), *R. & R. adopted*, 2020 U.S. Dist. LEXIS 194305 (D. Utah Oct. 19, 2020)
(unpublished).

[119] *Id.* at *12–13.

[120] (Tr. 29–30.)

Specifically, the ALJ considered Dr. Colledge's opinion regarding Ms. L.'s mental abilities and work-related limitations—including Dr. Colledge's statements that Ms. L. had "some impairment in her capacity to tolerate work stress" but could remember and carry out "simple as well as complex instructions" and complete "some basic work tasks."[121]  In finding this opinion "of limited persuasiveness," the ALJ noted Ms. L.'s activities of daily living included "going to the store and running errands," caring for family members, and cooking, cleaning, shopping, and driving.[122]  The ALJ also observed Ms. L. was not receiving any specialized mental health treatment.[123]  Further, at the end of her RFC analysis, the ALJ noted Ms. L.'s "depression and anxiety, while not discussed in detail in this section, were considered in the formulation of [Ms. L.'s] residual functional capacity."[124]  Ultimately, the ALJ concluded these "nonsevere impairments do not warrant additional restrictions."[125]

Overall, this discussion demonstrates the ALJ separately considered Ms. L.'s mental impairments in assessing her RFC rather than solely relying on her step-two findings.  As in *Suttles* and *Terry M.*, the ALJ discussed evidence relating to Ms. L.'s mental impairments and limitations in the RFC analysis.  Further, the ALJ expressly found no mental RFC limitations were warranted—going beyond the pointed omissions

---

[121] (Tr. 29.)

[122] (*Id.*)

[123] (*Id.*)

[124] (Tr. 30.)

[125] (*Id.*)

the *Suttles* and *Terry M.* courts considered adequate (when combined with a discussion of mental impairment evidence).[126]  No doubt, the ALJ here could have been more thorough and explicit in linking the discussion of the evidence to her finding that no mental limitations were warranted.  Though somewhat scant, the ALJ's discussion is adequate to show she accounted for mental impairments in the RFC assessment.

In arguing the ALJ improperly relied on the step-two findings in assessing RFC, Ms. L. points to the ALJ's statement, at step two, that "the following residual functional capacity assessment reflect[ed] the degree of limitation" she found in the "paragraph B" analysis.[127]  On its own, this statement could be interpreted to indicate the ALJ improperly substituted the paragraph B analysis for an RFC assessment.[128]  But the ALJ also explicitly noted the paragraph B analysis was not an RFC assessment,[129] and she separately discussed mental impairments and limitations in the RFC analysis.[130] Viewed in the context of the ALJ's full decision, this statement does not establish the ALJ improperly relied on step-two findings in place of an RFC assessment.

---

[126] *See Suttles*, 543 F. App'x at 826 (noting the ALJ "pointedly omitted" mental limitations from the RFC); *Terry M.*, 2020 U.S. Dist. LEXIS 195895, at *13 (noting the ALJ "specifically omitted" mental limitations from the RFC).

[127] (Tr. 23; *see also* Opening Br. 13–14, Doc. No. 17.)

[128] *See Kelly S.*, 2024 U.S. Dist. LEXIS 131970, at *5–6 (finding an identical statement indicated improper reliance on the paragraph B findings, where the RFC analysis contained no discussion of mental impairments); *Lori A.*, 2022 U.S. Dist. LEXIS 133043, at *7–8 (same).

[129] (*See* Tr. 23.)

[130] (*See* Tr. 29–30.)

In sum, the record shows the ALJ adequately considered Ms. L.'s mental impairments in assessing her RFC, and the ALJ did not improperly rely on the step-two finding of nonseverity.

### 3. Substantial Evidence

Finally, Ms. L. argues evidence in the record supports the inclusion of mental limitations in the RFC.[131]  She points to hearing testimony and function reports indicating she experienced difficulty in crowds due to anxiety and pain; she sometimes had to leave a store if a lot of people were there; and she did not get along with authority figures.[132]  She also points to Dr. Colledge's report, which indicated a diagnosis of depression and anxiety, and documented Ms. L's self-reported symptoms—including lack of energy and motivation, and anxiety triggered by "dealing with lots of people."[133]  And Ms. L. points to medical records documenting an anxiety diagnosis and indicating she took medications for anxiety and mood.[134]

Ms. L.'s argument reflects a misconception of the standard of review.  The relevant inquiry is whether substantial evidence supports *the ALJ's findings*—not whether substantial evidence exists which might support an alternative finding.[135]

---

[131] (Opening Br. 17–19, Doc. No. 17.)

[132] (*Id.* at 17–18 (citing Tr. 53–55 (hearing testimony); Tr. 239–40 (Ms. L.'s July 13, 2022 function report); Tr. 251–52 (function report from Ms. L.'s husband)).)

[133] (*Id.* at 18 (citing Tr. 670, 672).)

[134] (*Id.* at 18–19 (citing Tr. 315, 325, 338, 345, 348, 405–06, 416, 420, 558, 593, 676, 686, 758, 763, 809, 1113)).)

[135] *See Biestek*, 587 U.S. at 102.

Indeed, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[136]  Ms. L. does not make a colorable argument that the ALJ's findings are unsupported by substantial evidence.  Indeed, in her reply, she confirms she seeks reversal and remand due to legal errors—not based on a lack of evidence.[137]

In any event, substantial evidence supports the ALJ's finding that mental RFC limitations were unwarranted.  As the ALJ noted in the RFC assessment, Ms. L. reported (both to Dr. Colledge and in function reports) that she was able to shop and run errands, complete numerous household chores, and care for herself and family members.[138]  The ALJ also accurately noted Ms. L. did not receive specialized mental health treatment, other than medication.[139]  And while Dr. Raps assessed mild limitations in the broad paragraph B areas of interacting with others and concentrating, persisting, and maintaining pace, the record contains no medical opinion or prior administrative medical finding assessing specific work-related functional limitations in those areas.  Based on this record, the ALJ reasonably concluded the mild limitations at

---

[136] *Lax*, 489 F.3d at 1084 (citation omitted).

[137] (Pl.'s Reply Br. 1, Doc. No. 25.)  Ms. L. goes on to state, in conclusory fashion, that "the ALJ's legal errors show that the decision is not based on substantial evidence," but she makes no further argument regarding a lack of substantial evidence.  (*Id.* at 2.)

[138] (*See* Tr. 29; Tr. 206–213 (Ms. L.'s April 26, 2022 function report); Tr. 238–39 (Ms. L.'s July 13, 2022 function report); Tr. 672 (Dr. Colledge's report).)

[139] (Tr. 21–22, 29.)

step two did not result in work-related functional limitations for purposes of the RFC.

Accordingly, substantial evidence supports the ALJ's mental RFC finding.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 17th day of March, 2026.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge